No. 13.—EDWARD CAREY, Assignee of the Bank of Columbus, plaintiff in error, *vs.* KING and HOOPER, defendants in errror.

[1.] A party is not entitled to a new trial upon the *ground of surprise* in the absence of a material witness, when no diligence has been used to procure

the attendance of the witness; even though his absence was procured by the improper conduct of the prevailing party.

[2.] A new trial will be granted for disingenuous attempts on the part of the prevailing party, to stifle or suppress evidence, or to thwart the proceedings, or to obtain an unconscionable advantage. Upon this ground, a new trial awarded where the defendant, by letters and persuasions without the knowledge of the plaintiff, induced a witness to absent himself from the town in which he lived, and in which the Court was sitting, on the day on which the cause was set down for trial, in order to prevent the plaintiff from proving a material fact, known to the witness, which he knew was material, and which he had reason to believe could be proven by no one but himself.

Motion to reinstate in Muscogee Superior Court. Decided by Judge ALEXANDER, May Term, 1848.

The facts are embodied in the the decision.

JONES, BENNING & JONES, HOLT and WILLIAM DOUGHERTY, for plaintiff in error,

Insisted that if any artifice or trick be practiced to prevent the attendance of witnesses, a new trial ought to be granted. *Graham on New Trials*, 54. And the authorities there cited, and cases referred to, and cited; 11 *Mod.* 141. *Bull, Nisi Prius*, 328. 1 *Burr.* 570. 1 *Mod.* 156.

Also, that all disingenuous attempts to stifle or suppress evidence, or to thwart the proceedings, or to obtain an unconscionable advantage, or to mislead the Court or jury, will be defeated by setting aside the verdict. *Graham New Tri.* 56, and authorities there cited and cases referred to. 1 *Burr.* 352. 9 *Price,* 76. 7 *Wend.* 62.

The plaintiff's counsel also insist that motions to reinstate are in the nature of motions to continue, &c.

COLQUITTT & WELLBORN, for defendants in error,

Submitted that no error was committed in this. 1st. That no subpoena was served, or attempted to be served, upon the witness, Barnard, whose testimony is represented in the bill of exceptions to have been important to the plaintiff in error on the trial when the nonsuit was awarded. The plaintiff was guilty of gross negligence, in not having taken the proper legal steps to coerce the attendance of witness, and, therefore, is precluded from complaint. *Vigilantibus non dormientibus leges subveniunt. Prince's*

Carey *vs.* King and Hooper.

*Dig.* 424. *Graham on New Trials,* 174, 175, 175, 177. *Stroup vs. Sullivan and Black,* 2 *Kel. Rep.* 275. The plaintiff cannot be permitted to pass the line of his own laches in the premises, to try the case upon the supposed misconduct of the opposite party. As well might one attempt to be entertained in a Court of Equity, having unclean hands in the matter of his complaint. It does not appear that witness had been, prior to the trial, so much as solicited to attend and give testimony. No promise had been asked or given—no trick or deceit practised upon the plaintiff in error, to beguile or mislead him in respect of the preparation of his cause, by either defendants in error or witness. The witness being wholly unaffected by any precept of the Court or authority of law, did but exercise his discretion in conforming his conduct to the preferences of the one party, rather than the other.

But least of all, can the plaintiff be heard on the ground of surprise. According to his own showing, it does not seem that Barnard's evidence was ever looked to by him before the trial. He chose rather to rely upon the notarial certificate. To make the plaintiff's case the more unfounded, his cause was set down for trial on a named day, and thus a better opportunity to prepare his proofs was afforded him. Courts of Law do not aspire to enforce any duties of a merely moral nature. Supposing, however, the witness to have been satisfied that the right of the cause was with defendants in error, and that an improper use was about to be made of his testimony, the defendants in error having lost, by casualty, the means of defence, it may be well doubted whether any rule of ethics was broken. Who shall decide the point of conscience?

Let a practical test be applied to the alleged rights of the plaintiff to a new trial. Had he moved a continuation of his cause, when the nonsuit was awarded, with a view to procure the evidence of Barnard, most certainly he would have failed. Could he have obtained it, however, he would, by reason of his declension to move it, aside from other causes, have disentitled himself to the rule to set aside the nonsuit. Most clearly he could not have moved an attachment, or other penal process against the witness, prior to service, or attempt at service, of subpœna. The plaintiff, then, has sustained no *legal* damage. *Shetfiall vs. Clay, R. M. Charlton's Rep.* 7. *Gist vs. Mason,* 1 *Tenn.* 84.

2. It does not appear, by the affidavit of the *witness, Barnard,*

that if he had been examined he would have given the desired testimony. This is a fatal objection to the plaintiff's motion.

Defendants further contend there is no error, because the rule was discharged by operation of law, and for want of certainty. 1 *Todd's Practice*, 499. 1 *Kelly, Nisbet vs. Lawson*. 3 do. *Bethune vs. Bonner*.

The reason may be wrong, but the decision is right. 2 *Peter's Digest*, 135.

*By the Court.*—NISBET, J. delivering the opinion.

An action was brought in the Superior Court of Muscogee county, by Edward Carey, assignee of the Bank of Columbus, against King & Hooper, indorsers upon a bill of exchange. The cause being ripe for trial, was set down for a hearing on a particular day, and in consequence of the absence of E. Barnard, the notary public, who made demand, and gave notice to the indorsers, the plaintiff was unable to make out his case, and submitted to a nonsuit. A rule *nisi* was then taken by the plaintiff, calling upon the defendants to show cause why the nonsuit should not be set aside, and a new trial granted, upon the following grounds:

1st. Because the plaintiff's counsel was surprised on the trial of the cause, by the absence of E. Barnard, who was the only person by whom notice of non-payment, necessary to charge the defendants, as indorsers, could be proven, and who is a merchant residing in the city of Columbus, and a notary public, and generally to be found at his office, or counting room, and seldom absent therefrom in business hours, and that plaintiff went to the store of witness for him before the case was submitted to the jury.

2d. Because the absence of said E. Barnard was procured at the instance and request of the defendants, or by some one acting in their behalf, to prevent the plaintiff from having the benefit of the testimony of said Barnard, on the trial of said cause.

The rule for a new trial was supported by the affidavits of the plaintiff, *Mr. Barnard*, the witness, and *Mr. Lee*. *Mr. Barnard* states in substance, that being about to leave the city of Columbus in the spring of 1847, one of the defendants stated to him, that the plaintiff might want his testimony in the case, which was then pending, and expressed a hope that his business might not

permit him to return to Columbus until the adjournment of th
Court; that whilst he was absent in the city of New Orleans, he received a letter from one of the defendants, very much to the same
purport; that after his return to Columbus, he had a conversation
shortly before the case was expected to be tried, with one of the
defendants, the object of which seemed to be to procure his absence from the trial, and to prevent plaintiff from having the benefit of his testimony on the trial; and among other things, by way
of inducement to him to yield to his solicitations, the defendant
stated to him, that the debt was an old and large ore, sufficient to ruin him if he had it to pay; and that the debt, or a greater part thereof, had been paid; but owing to some cause, (perhaps the death of Mr. A. B. Davis,) he was unable to prove it;
and requested him to absent himself from town on the trial, which
he agreed to do if he was not subpœnaed; that on the morning
of the day upon which he was informed by the defendant, the cause
was to be tried, Henry King, one of the defendants, came to him
and renewed his request that he should leave the town to prevent
the plaintiff from procuring his testsmony on the trial, which was
about to take place; which he, not being subpœnaed, agreed to
do, and did ride out into the country, and remained until about half
past 11 o'clock, when he returned to his dwelling house, and was
there but a short time, when the plaintiff called for him to go the
Court House to testify in the case.

*Mr. Lee* states, that on the day of the trial, and a short time before the nonsuit was awarded in the case, he met with Richard
Hooper, (one of the defendants,) who seemed much elated at the
result of the case, and told him that E. Barnard was not out of
town, as was supposed, but that he had him in some back room,
taking refreshments with him.

*Mr. Carey,* the plaintiff, states in substance as follows: That
Barnard was the notary of the Bank of Columbus; that he demanded and protested the bill, and gave the notice to the defendants;
that he was the only person by whom he could prove these facts,
that he resided, and kept his office, about 600 yards from the
court house, that he was in the habit of attending the Court,
when desired to do so, either with or without a subpœna, to prove his
official acts as notary; that as soon as he was informed, during the
trial, that his testimony was needed, he went to his store for him

first, and was informed by his clerk that he had gone out of town; he then went to the livery stable, where he had been informed Barnard had got a horse, and there also he learned that he had gone out of town.   He then returned to the Court-House, and informed his counsel that he could not find Barnard, and was directed again to go in search of him; he then went out again to the livery-stable, where he was informed he had returned—then to his store—then to his residence—where he found him, and asked him to go immediately to the Court-House, which he promised to do, but the case had been non-suited before they got to the Court-House.

The defendants filed their answer to the rule, and after hearing argument, the Court refused a new trial upon both the grounds taken in the rule.   And it is to this decision that Mr. Carey, the plaintiff in error, excepts.

[1.] We think the Court was right on the first ground taken in the rule, to wit, *surprise.*   There certainly was no surprise here. There can be no surprise, by reason of the absence a material witness, when there has been no diligence used to procure his attendance.   He was not subpœnaed—had not been even requested to attend—indeed, no effort had been made, whatever, to secure his presence in Court, until after the cause had been called for trial, and the trial was in progress.   The plaintiff could not, under these circumstances, have continued his cause—he would not have been entitled to a continuance on the ground of surprise. It would be no reply to this want of diligence, that plaintiff and his counsel, did not think the testimony would be needed in the cause, until it was on trial.   Counsel are presumed to know the law of their cases, and must anticipate, at their peril, their legal necessities.   A misconception of the law of the case, cannot generally be recognized as ground for surprise.   Nor does it relieve the party from the obligation of diligence, that this individual was a *notary public,* and that he was in the employment of the Bank of Columbus, the plaintiff's assignor.   It is not made the duty of the notary, by law, to attend as a witness, in cases where his testimony, as a notary, may be needed; that is no part of the legal obligation of his office.   The fact, that being a notary, he is patronised (his office having emoluments) by a Bank, a mercantile house, or an individual, may create a moral obligation to attend

Carey *vs.* King and Hooper.

when requested, in Court to prove his official acts, but no legal obligation.

[2.] But we are clear that the rule ought to have been made absolute on the second ground, to wit: the misconduct of the defendants, who prevailed in the Court below. We separate this ground altogether from all considerations of diligence. The question is not whether the proper, or any steps were taken to secure the attendance of Mr. Barnard, nor whether he, in leaving the town of Columbus, on the day when the trial was had, for the purpose of preventing the plaintiff from having the benefit of his testomy, violated any legal obligation or incurred any penalty. I express no opinion whether he, under the circumstances of this case, was guilty of a contempt of Court. I will say, however, that he acted with a strange disregard to moral obligation, of the duty of good citizenship, and with a no less strange misconception of what is due to the authority of the Court and the majesty of the Laws. Our Courts are organised to administer justice between man and man. And it is the duty of all good citizens to lend their aid to that administration—to sustain the rightful authority of their own courts, and to preserve the fountains of justice pure. No man is in the full discharge of all the obligations of a good citizen, who directly or indirectly, *prevents* the regular course of justice. He has no right, by any agency of his, to thwart or hinder, or in any wise trouble the course of justice. So long as the law and the administrators of the law, by the authority of the State duly constituted, are sustained by a healthful public sentiment, based upon the cordial co-operation and right conduct of individuals, the Courts of justice will be found to fulfil the great ends of the civil and criminal administration. But if the citizen is permitted to combine with parties to withhold testimony, or in any other way to disturb the course of justice, and to prevent the trial of causes upon their merits, our Courts will become but a mockery and a farce. I do not say that in this case, or in any case, a witness, not subpœnaed, is bound legally or morally to attend Court, unless he had given the party needing his testimony assurances that he would attend, (in that event the moral obligation would be perfect,) but I do say, that he is not at liberty, consistently with the obligations of a good citizen, by arrangement with the adverse party, knowing that his testimony might be needed, to absent himself with a view to prevent its being used in the cause.

Mr. Barnard admits, that at the instance of the defendants, or one of them, knowing that the cause was to be tried on that day, he did absent himself from Columbus, his usual place of business and abode, for the purpose of preventing the plaintiff from using him as a witness. He knew, too, that his testimony might be material, for he knew the character of the suit, and what the plaintiff might want to prove by him, and as he was the notary who protested the bill and gave the notice, he had reason to believe that he was the only person by whom notice could be proven. He therefore lent himself to one party, in order to defeat the other. Is not this an overt interference with the regular and impartial administration of the law? By his act the Court was prevented from trying the cause upon its merits. We do not call this a crime. We admit that he may have acted under a conviction that he was violating no obligation, legal or moral, and that he had a perfect right to act as he did act. But we think he acted under very imperfect views of his duty.

All this reasoning applies with intense force to the conduct of the defendants. They were parties before the Court. Their rights were in the hands of the Court, and equally the rights of the plaintiff, to be determined by the Court according to the forms of law. The Courts will not permit a party to interfere with those forms. It was the right of the plaintiff to prove the notice in this case. He had a right to prove it by Mr. Barnard, if he could get him into Court, either with or without a process of the Court. He had a right to expect that his adversary would resist his claim, only according to the forms of law. The defendants had no right to resist it in any other way. Both parties having submitted their rights to the Court, to be tried according to law, it was the duty of both parties to conform to the law in all their conduct, and come weal or woe, to abide its judgment. The reasons which the defendants present to the witness, to induce him to absent himself, are—1st. That if the claim of plaintiff should prevail against them, it would reduce them to beggary or ruin. 2d. That the claim was paid, or a great part of it, and they were unable to prove it. If the former is allowed to justify management, to keep a witness out of Court, then it may be justified in all cases. If the payment of the debt be an excuse for defeating the due administration of law, then away with all law, and all Courts, and all the ministers of justice, and let men take

Carey *vs.* King and Hooper.

their interests into their own hands.  This doctrine stops not short of the right of repudiation of Courts, law and processes. Men must pay their debts, adjudged by law to be due, whether they are ruined by it or not.  Not only so, but they must submit to the law, which prescribes the forms of determining when they are justly due.

Admitting, for the sake of the argument, that the latter reason is true in point of fact, still it is no justification for them.   The virtue of laws consists much in their generality.  They cannot turn aside from their stern and defined course, to accommodate themselves to the hard cases, which, under the very best systems, sometimes occur.  Better that injustice be done occasionally, however melancholy the necessity, than that the law should be relaxed, perverted or dispensed with, to meet the exigencies of an occasionally occurring *hard case.*   The latter course, indeed would be the most cruel injustice, and would work a wide ruin through all the departments of society.   And it is the duty of parties to take and act upon this view of the subject.   But whether it be or not true, it assumes for the party the right of judging in his own case.   Whether this debt was or not paid, was one of the questions, which the law devolved upon the Court for trial. The defendants had no right to anticipate the judgment of the Court, and to act upon their private judgment.   Now it is the duty of the Court to see to it, that its own authority be respected ; that trials are conducted according to the forms of law, and that no advantage be taken by one party over the other.   And if by the improper conduct of one party, he gains an unfair or unconscientious advantage over his adversary, the Courts will not permit him to retain it.   Courts of Law, as well as of Equity, require that the parties shall come into the trial, with clean hands. They will not permit the sanctuary of the laws to be polluted. To the extent of their powers, Courts of Law will grant relief against such advantage.   They will grant it in cases like the present, by awarding a new trial.   These views are sustained by authority.

In the first place, it is true as a general proposition, that a new trial will be granted on account of the *misbehavior* of the prevailing party, towards either juries or witnesses.  2 *Tidd*, 906. 7 *Mod.* 156.   3 *Brod. & Bing.* 272.   7 *Moore*, 87, *S. C.*

If any *artifice* or *trick* be resorted to, to prevent the attendance

of witnesses, or for the suppression of evidence a new trial will be granted. *Graham on New Trials*, 54, *and authorities there referred to.*

The conduct of the defendants in this instance, may not b econsidered as amounting to artifice or trick, strictly, but looks very much like it. There was something very much like artifice in importuning the witness to absent himself, upon *ex parte* representations of the case, and in entertaining him in a back room, during the progress of the trial, with refreshments.

But a new trial will be granted for disingenuous attempts to stifle or suppress evidence, or to thwart the proceedings, or to obtain an unconscionable advantage. *Graham on New Trials*, 56, *et seq. and authorities there quoted.* 1 *Burrow*, 352. 9 *Price*, 76. 7 *Wend*. 62, *Buller, N. P.* 328. Can it be doubted that the attempts of the defendants here, were to stifle or suppress evidence ? The attempt was to prevent the attendance of the witness, in order to prevent him from testifying in behalf of the plaintiff. It was more than an *attempt,* it was a successful effort. By their persuasions he did absent himself on the day of trial, and his testimony was thereby *in fact stifled.* Had he remained, the plaintiff would have had his testimony, the Court would have constrained his attendance, if it had become necessary, upon its being made to appear that he was within the curtilage of the Court. That these attempts were disingenuous, is demonstrated in this, that they were not open, not made with the knowledge of the plaintiff. One act done to stifle the testimony, was the secreting of the witness. They also succeeded in thwarting the proceedings of the Court. But if not on these accounts, then without doubt the new trial ought to be had, because, by disengenuous conduct, the defendants obtained an unconscionable advantage over their adversary. By their conduct the plaintiff was defeated, and a judgment of non-suit awarded against him ; for the record discloses the fact, that the plaintiff was non-suited, because he could not prove notice, and that he could have proved notice by Barnard, had he been present; and farther, that he was absent by the procurement of the defendants. The demonstration is complete. By their disingenuous conduct they have obtained an unconscionable advantage over the plaintiff, and we are not willing that they shall retain it. In the case of *Anderson vs. George, Lord Mansfield* granted a new trial, because the plaintiff, having

in Court a note necessary to the defence, would not produce it, and thereby obtained a verdict. Then it was said that the defendant was in default, because he might have commanded the note by a notice, which he had failed to give, and therefore, a new trial ought not to be granted. Just so here, it is contended that the plaintiff is in default; he might have commanded the testimony of Mr. Barnard by subpœna, but did not subpœna him ; therefore, a new trial ought not to be granted. But ₚLord Mansfield held, " that the plaintiff had taken an unfair advantage of the defendant, contrary to justice and good conscience. That the rules of practice must be *general,* but he who abused them in a particular case, should not shelter a trick by *regularity.*" 1 *Bur.*₂352. So here, we say that these defendants shall not shelter themselves [by an appeal to the practice of the Court, which requires ᵣa ｣party to subpœna a witness—they shall not be profited by *regularity.*

Buller in his *Nisi Prius.* refers to a case very much like this case, *Montpesson vs. Randle.* In that case, a material witness for the defendant concealed himself in the house of the plaintiff, to avoid being served with a subpœna, by which means the plaintiff obtained a verdict, but the Court set it aside without cost, "it being unreasonable, said the Court, for the plaintiff to carry[1] the cause down for trial, when she knew the defendant could not make a defence." *Buller, N. P.*₃328.

Let the judgment be reversed.