## McELMURRAY *v.* BLUE & STEWART.

1. A note payable to the vendor or bearer, given for the purchase money of land, being tranferred to a bearer by delivery and renewed from time to time, and the last renewal note being reduced to judgment, the land is subject to pay the judgment as against a homestead in the same land claimed and set up by the vendee, the defendant in the judgment. *Wofford* v. *Gaines*, 53 *Ga.* 485.

2. The Supreme Court will not reverse a judgment denying a new trial for newly discovered evidence, where it appears from the brief of evidence that some of the material facts alleged to be newly discovered were known to the movant at the time of trial. His affidavit to the contrary being discredited by the brief, may be wholly disregarded, especially where it is the only evidence of his diligence in preparing for trial, and no specific acts of diligence are disclosed even by it.

April 10, 1893. Argued at the last term.

Before Judge MARTIN. Marion superior court. April term, 1892.

An execution in favor of Blue & Stewart against McElmurray, issued from a judgment rendered November 14, 1885, was levied on land in which the defendant had taken a homestead, by virtue of an affidavit that the debt which was the foundation of the judgment was for the purchase money of the land levied on. Issue was taken by counter-affidavit. The jury found for the plaintiffs, and the defendant's motion for a new trial was overruled. The grounds of the motion are, that the verdict is contrary to law and evidence, that the court erred in charging the jury, and because of newly discovered evidence. The charge assigned as error was, that if the jury believed from the testimony that the defendant about twelve years ago bought land from one Chapman and gave Chapman his notes for the purchase money, and that afterwards he borrowed money from the plaintiffs, which he used in taking up Chapman's note, and that the note, the foundation of the judgment, was given the plaintiffs for the money so borrowed, or in renewal of other notes for the money so borrowed, then it would be in the nature of the purchase money, and the defendant could not subsequently take a homestead in the property as against the plaintiffs' debt.

At the trial Blue testified: Defendant bought the land in controversy from Chapman about 12 or 13 years ago. Blue & Stewart were then merchandising. Chapman owed them a store account which was due, and he held a note given him by defendant for the purchase money of the land. Defendant, Chapman and I got together, and Chapman, desiring to settle his account, gave to us defendant's note, we paying to Chapman the difference between the amount of the account and defendant's note. This was done at defendant's consent, and Chapman at the time pressing defendant for the money and defendant not being able to pay got us to do so. The note was negotiable, and passed by delivery

only. I don't know whether Chapman had made defendant a deed at this time or not. We took the note and held it, and it was renewed from time to time by defendant, and it is the same note the foundation of the judgment upon which this execution issued. Defendant had a store account with Blue & Stewart each year, which he from time to time settled, leaving the land note unpaid. We have a separate judgment against him for the store account, that is now outstanding and unpaid. My mother was Mary J. Blue, widow of my father who left an estate including some money. The only heirs were myself and Stewart's wife. Stewart and I had supervision of the property, and my mother sometimes loaned money on my approval. She never did, however, lend defendant any money, or have anything to do with this matter.

Defendant testified: The note, the foundation of the judgment from which the execution issued, was given for a store account. I bought the land from Chapman 13 or 14 years ago, gave him my notes for the purchase money, and he made me a deed to the land at the same time. He was owing Blue & Stewart a store account, and the fall afterwards settled the store account by giving Blue & Stewart my land note. The note was payable to bearer, and passed by delivery; it was not transferred to Blue & Stewart. When it came due, I borrowed part of the money from Mrs. Mary Blue and paid it, and I settled with Mrs. Blue afterwards by trading her a mule. I don't owe anybody one dime on that land. All I owe Blue & Stewart is for a store account I made with them. This note was given to close up the store account, and so sworn on the trial when note was sued in court.

The alleged newly discovered testimony is contained in affidavits by Chapman and Wall. The substance of Wall's affidavit is, that the foundation of the judgment

in question was not the purchase money of land, but was for a store account of goods sold by plaintiffs to defendant; that he was present at the trial of the case when plaintiffs sued defendant upon a certain note given in settlement of said account; that the books of account of plaintiffs were introduced in evidence at that trial; and that affiant heard Blue testify that the note was given for the account in the books, and that the same was correct. Chapman's affidavit was, that about twelve years ago he sold defendant the land upon which he has a homestead, and which is in controversy between him and Blue; that at the time he sold defendant the land he made him a fee simple deed and took his notes for the purchase money; that Blue came in possession of one of the purchase money notes from him in settlement of a store account; that the note was not transferred but passed by delivery; that about two years after Blue got the note, affiant asked him how defendant was getting along, and if he had paid for his land, when Blue said he was getting along very well and had paid up the land note, and did not owe him anything except a store account; and that affiant did not tell defendant or his attorneys anything about what he knows, until after the trial, and he has no interest in the case.

Morgan McMichael and W. D. Crawford, for plaintiff in error.

Miller & Munro, *contra.*

Bleckley, Chief Justice.

A homestead in land will not protect the land against paying its own purchase money. Code of 1873, §5135; Code of 1882, §5211. There was a conflict of evidence as to whether the judgment in question was founded on a note given for the purchase money of goods (a store account), or in renewal of a note given by McElmurray to Chapman for land. The jury settled this conflict against the debtor and in favor of the creditors. The

note given to Chapman was payable to him or bearer, and by him transferred by mere delivery to Blue & Stewart. According to their evidence, it was renewed from time to time and the last renewal note was the basis of the judgment. On this state of facts the land would be subject to pay the judgment as against a homestead claimed and set up by McElmurray, Chapman's vendee. *Wofford v. Gaines*, 53 *Ga.* 485. That part of the charge of the court which is assigned as error was apparently not adjusted accurately to the facts in evidence, but the deviation was too slight to be material, as the real contest between the parties was as to whether the note reduced to judgment represented the purchase money of land or the purchase money of goods.

2. From the brief of evidence we think it clearly appears that some of the material facts alleged to be newly discovered were known to the movant at the time of trial. His affidavit that all of them were discovered afterwards is thus discredited, and may be disregarded. There is no evidence of his diligence in preparing for trial except as stated in this affidavit, and even it discloses no specific acts of diligence. Our conclusion is that there was no error in overruling the motion for a new trial.                    *Judgment affirmed.*