9858, 9859.  COTTON STATES SEED &c. CO. v. MACON,
DUBLIN & SAVANNAH R. CO.; and vice versa.

Where a trial judge, in overruling a motion for a new trial based on the
general grounds only, fails to exercise that discretion with which he
is charged by law, this court, on proper exception, is compelled to re-
verse the judgment, unless the evidence demanded the verdict.

DECIDED JANUARY 14, 1919.

Action for damages; from city court of Macon—Judge Guerry.
May 8, 1918.

*Miller & Jones, Warren Grice,* for plaintiff.

*Minter Wimberly, Jesse Harris, Charles Akerman,* for defendant.

LUKE, J. · The Cotton States Seed and Fertilizer Company sued
the Macon, Dublin and Savannah Railroad Company for damages
alleged to have been occasioned by the negligence of the defendant.
The petition alleged: that the plaintiff was a fertilizer factory on
the outskirts of the City of Macon, with its plant located on the
low lands of the Ocmulgee river, up-stream from the defendant's
railroad embankment, over which its tracks approach and cross the
Ocmulgee river below the plant of the plaintiff.  Around the prop-
erty of the plantiff there had been erected a levee sufficient to
keep out the water in ordinary freshets.  The railroad embankment
filled up the natural drains and outlets of the river in times of
freshet, and, by impeding and preventing the overflow waters,
backed them up on the plaintiff's property and caused them to over-
flow its levee and occasioned the damage sued for.  The water
which inundated the plaintiff's plant was an ordinary freshet; and
had it not been for the impounding of the water by the defendant,
the damage would not have been done.  The jury returned a ver-
dict in favor of the defendant.  The defendant filed a motion
for a new trial, based on general grounds.  The court overruled the
motion, and, as a part of the order overruling and denying the
motion, filed an opinion.  To this order the plaintiff excepts upon
the ground that the evidence demanded a verdict in favor of the
plaintiff, and upon the ground that the court, in the judgment
overruling the motion for a new trial, did not exercise that discre-
tion with which the trial judge is charged by law.

1.  The order of the trial judge in overruling the motion for
a new trial is as follows: . "The movant alleges in its petition
that the freshet, the waters of which it says were obstructed by the

defendant's embankment, so as to cause the overflow and injury of its property, was an ordinary freshet. The defendant denied this allegation in its answer, and pleaded that the freshet was extraordinary and unprecedented. There was evidence strongly supporting each contention, and the court, in its instructions on this issue, gave the petitioner the full benefit of its contention, and the court cannot say that the finding of the jury thereon is without sufficient evidence to support it, or strongly and decidedly against the weight of the evidence. While, under the pleadings and issues thereby made, the court may not have been authorized to do so, it instructed the jury in this connection as follows: 'If the freshet was extraordinary and unprecedented, but would not for this reason have overflowed and damaged the plaintiff's property without being obstructed by defendant's embankment, and defendant's embankment did obstruct such freshet, and thereby caused it to overflow and damage the plaintiff's property when it would not have been otherwise damaged, the defendant is liable.' The court believed during the trial, and now believes, that the petitioner's right of recovery on this theory was shown by a preponderance of the evidence, but the court cannot say that the verdict of the jury to the contrary is without sufficient evidence to support it, or strongly and decidedly against the weight of the evidence. The court was during the trial, and is now, of the opinion, from the evidence, that while the waters of the freshet were detained by the defendant's embankment, and were thereby finally ponded around three sides of petitioner's levee, so that they rose to the point where some of them ran over its western levee and over the gate in the switchway through its southern or front levee, and must have increased the depth of submergence and the extent of the damages, the breaking through of the waters at these points was not chiefly the result of the pressure of ponded water, but of the violence of the water flowing from the river through the crevasses of the city's levee which they made, and through the trestle of the old Macon & Augusta (or Central) Railroad embankment against the western levee of petitioner, where it broke at a point much in the line of said waters after they rose high enough to reach said levee, and against the gate, sand-bags, and abutments at the switch entrance in the southern levee of petitioner, while the waters in that vicinity were passing violently through what must have been a gorge

between the petitioner's levee and the defendant's embankment. Possibly the court should have instructed the jury on this theory of increased overflow and damages, and in doing so have charged them on the subject of nominal and general damages, but there was no request or claim or contention on the subject, the petitioner asking the special damages sued for only, and it did not occur to the court to give instructions in relation thereto. Petitioner, in paragraph 11 of the petition, avers, 'that the entire injury and damage it has suffered by reason of said freshet was caused solely by the faulty construction and maintenance of the defendant's roadway embankment, and that petitioner was wholly without fault in regard thereto, and could not have avoided, even by the exercise of extraordinary diligence, the result of the wrong-doing on the part of the defendant.' This paragraph the defendant denied in its answer, and the court cannot say that the verdict of the jury in its favor was without evidence to support it, or strongly and decidedly against the weight of the evidence.

"The two great causes of the catastrophe were the breaks through the city's levee by the waters of the freshet, and their subsequent detention by the defendant's embankment. The court cannot say, as a matter of law or fact, the latter was the proximate cause. The waters overflowed the gate in the switchway, but never overflowed the petitioner's southern levee through which the switchway entered, and which was higher than the gate, and the petitioner was at least equally responsible for the existence of the switchway. Whether the switchway precipitated or increased the overflow of petitioner's property, or did both, or whether, if the switchway had not been there, the overflow of the petitioner's western levee at the break therein or elsewhere would have increasd or diminished the over-flow of petitioner's property, are questions that are very problemat-ical. Although there was much discussion thereof during the trial, there was not in the pleadings any reference to the evident fact that the great mass of the waters of the freshet which over-flower petitioner's property and vicinity escaped from the river through the two crevasses in the city's levee, which, together with the petitioner's river levee and the river levees of other owners below, and a portion of the Macon & Augusta embankment, extended from the front of the city's park to the defendant's embankment, and constituted one continuous river levee. While

it is true that prior to the construction of this levee many years ago, the waters of the river in times of ordinary freshet, as well as in times of extraordinary freshet, must have overflowed the low-lands described, and had established drains through the same, it did not appear that such had been the case since 1900, or definitely so since the construction of the river levee, except in 1916 when the alleged freshet occurred, and in 1913 during another freshet; and on both of these occasions the overflow occurred by means of breaks through the river levee, when, according to the record of high-water marks of the river kept at Macon by the United States Government, covering the period from 1900 to 1916 inclusive, that of 1916 reached 23.1', and that of 1913 23.6', the lowest stage in the record being 18' in 1916. It appears from the evidence that the freshet in dispute, that of 1916, was larger and more violent and destructive than that of 1913, at and upon the property of petitioner and vicinity, although its high-water mark at Macon was 5/10 of an inch lower. The defendant constructed its embankment in 1912, and the question of its negligence should be determined in the light of the conditions at that time and in view of the notice it may have then had of the dangers of the situation with reference to the petitioner's property and its own. The defendant, probably relying upon the existing system of river levees as safe for all concerned, apparently provided culverts in its embankment for surface-water only; whereas it is also apparent that the petitioner did not rely upon the river levees only, as it had additional levees of its own for the further or ultimate protection of its property, and the defendant had notice of this fact through the obvious presence of the same.

"Did the defendant, under all the circumstances, have the right, when it built its embankment, to rely upon the river levees and the levees of the petitioner so far as the property of the petitioner was concerned? If it did not have such right and it nevertheless did so, and such security proved inadequate, and the disaster occurred partly for this reason and partly for the reason that the waters could not escape through the culverts of defendant's embankment, because they were inadequate for the purpose, was the defendant thereby guilty of negligence, making it liable for the damages that ensued? *Georgia Railroad Co.* v. *Bohler*, 98 *Ga.* 188 (26 S. E. 739.) If conditions and structures partly natural and

partly artificial are safe for adjoining and neighboring land-owners while operative, and some person should contribute another structure, and the then-existing conditions and structures should cause damages to one of such owners, which would not have occurred without the co-operation of the added structure, such person would be liable. In this case, however, if the existing conditions and structures on which defendant relied had all remained operative, the overflow and damage to the petitioner's property would not have occurred by means of the defendant's embankment or otherwise,—that is to say if the river levee had performed its function. This being true, which was the proximate cause,— the breaking of the freshet through the river levee, or its inability to break through the defendant's embankment? While the continuation of the river levees, including a part of the Macon & Augusta Railroad and the river levees of the petitioner and the owners below, as well as that of the city, may have been a system as to the petitioner, it may not have been as to the city. The petitioner was evidently enjoying the protection of it as a system, but the city had connected its levee not with petitioner's levee or any other levee, but with the Macon & Augusta embankment, and was not concerned beyond that, and may not have been responsible to land-owner's below and outside the city limits, for that or other reasons, for a failure, if any, to properly maintain its levee and the consequent injury. *Savannah, Florida & Western Railway Co.* v. *Lawton,* 75 *Ga.* 192. According to the verdict the defendant is not liable, and according to the preceding view the city is not liable, or may not be liable, because it is a municipal corporation. It therefore seems that the petitioner, notwithstanding the fact that it has suffered serious damages, without any fault on its part, and without responsibility on the part of others, because of the absence of wrong intent and culpable negligence on their part, is without remedy and right against any one whomsoever. The jury probably believed that the freshet was extraordinary and unprecedented, an act of God, and left the parties where the freshet left them, the petitioner with its damaged levees, machinery and material, and the defendant with its broken embankment; and the court cannot say that their verdict is without sufficient evidence to support it, or strongly and decidedly against the weight of the evidence. The court is not presuming to enlighten the court of review, but is

seeking to take its judgment refusing a new trial away from the
general principles and presumptions in its favor by exposing its
controlling error or errors, if any, so that it or they may be
detected and corrected by reversal. The motion to set aside the
verdict and judgment and grant a new trial is refused."

In view of the statement of the trial judge in his order, we are
constrained to hold that there is no such unqualified approval of
the finding of the jury by the court as convinces us that the trial
judge exercised that discretion with which he is by law charged, in
passing upon the motion for a new trial in this case. It was said
by Judge Powell in *Walters* v. *State,* 6 *Ga. App.* 565 (65 S. E.
357) : "If the judge meant to say that the verdict of the jury
had convinced his mind and conscience of the defendant's guilt,
the approval is sufficient; but if he meant to say that he did not
have the power to set aside, or that there was no duty upon him
to set it aside, if his mind and conscience were not convinced of
the defendant's guilt, then the approval is insufficient. Before the
verdict of the jury becomes final it should, where defendant
requires it by a motion for a new trial, receive the approval of the
mind and conscience of one more man—the trial judge. Until
all thirteen, the twelve jurors and the judge, agree upon the pris-
oner's guilt, his conviction is not legally final. The finding of the
jury is not binding on the judge. It may be, and for the most part
should be, highly persuasive upon him, but he is authorized to
set it aside, and indeed is under the duty of doing so if he does
not approve it as a finding of fact." See also *Livingston* v. *Taylor,*
132 *Ga.* 9 (7) (61 S. E. 694) ; *Thompson* v. *Warren,* 118 *Ga.* 644
(45 S. E. 912) ; *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501,
102 Am. St. R. 71, 1 Ann. Cas. 169).

2. We have carefully examined the cross-bill of exceptions, and
are of the opinion that the trial court committed no error in any
of the rulings complained of therein.

3. The defendant in error in its brief requests that if this court
should be of the opinion that the trial judge did not exercise his
discretion in passing upon the motion for a new trial, the judg-
ment be not unqualifiedly reversed, but that the case be returned
to the court below with direction that the judge pass upon the
motion in the exercise of his legal discretion. The defendant in
error relies upon the decision in *Central Railway* v. *O'Kelley,* 16

*Ga. App.* 594 (3) (85 S. E. 938). We do not think that the *O'Kelley* case is a precedent for the request. In the *O'Kelley* case a motion for a new trial had been overruled, and the judgment was affirmed by the appellate court, and thereafter a motion for a new trial was made, upon extraordinary grounds, and the trial court determined that it had no jurisdiction to pass upon the motion. This court held merely that the trial court did have jurisdiction, and the motion was returned to the trial court with direction that .it pass upon the case in the exercise of that discretion with which it was charged by law.

4. We do not mean to intimate that the verdict in this case was wrong, or that there was not evidence upon which it might stand. The reversal of the order of the trial judge, overruling and denying the motion for a new trial, is solely upon the ground that .in his order and opinion, taken altogether, he did not unqualifiedly approve the finding of the jury.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Wade, C. J., and Jenkins, J., concur.*