### 4800.   MOORE *v.* THE STATE.

1. A conviction of larceny of property described in the indictment as "one set of single black-leather buggy harness" is not supported by proof of the larceny of a set of harness not in any way identified in the evidence as being either black in color or made of leather. The fact that the prosecutor identified the harness found by him in the possession

of the accused as the harness he had lost could not serve to identify it as the harness described in the indictment, in the absence of testimony indicating that the harness lost and recovered was black leather buggy harness.

2. Though, in an indictment charging larceny, minute description of the property alleged to have been stolen may not be necessary in the first instance, the description as alleged must be proved whenever a failure of the evidence to conform to the descriptive averments might tend to put the accused again in jeopardy for the same offense.

DECIDED JUNE 25, 1913. .

Indictment for larceny; from Mitchell superior court—Judge Frank Park. November 27, 1912.

*J. J. Hill, E. E. Cox,* for plaintiff in error.

*R. C. Bell, solicitor-general, J. H. Tipton,* contra.

RUSSELL, J. The indictment was for simple larceny. It was alleged therein that the accused had stolen, of the personal goods of J. G. Hare, "one set of single black-leather buggy harness." On the trial it appeared that the prosecutor hitched his mule under the shed of a gin-house in the town of Pelham. When he came back to get his mule, after dark, he found that all the harness had been taken off her, except the collar. A week later, on coming back to the town, he received information that the defendant had been seen with a part of a set of harness like the one which had been taken from his mule. In company with two policemen he went to the home of the defendant, and told the defendant that they were looking for a part of a set of buggy harness, and wanted to search his house. The defendant readily assented to this, and took them into a room, where he showed them, lying on a pile of cotton-seed, that part of the set of harness which he had. The bridle was not with that part of this harness, and, after the prosecutor described the bridle, the defendant stated that it was hanging on the fence in his lot, though he had changed the bits. He stated that he had bought the harness from another negro. According to the prosecutor, the defendant did not try to hide the harness, but readily showed it to the party as soon as they asked for it. The testimony of one of the policemen, as to the finding of the harness and the willingness of the accused to produce it, corresponded with that of the prosecutor. The defendant introduced three witnesses who swore they were present at the time he purchased the harness and saw him pay for it; and the defendant, in his statement, gave substantially the same account of the origin

of his possession. The jury found him guilty; and, the court having overruled his motion for a new trial, he excepted.

The only question presented is whether the property recovered by the prosecutor was sufficiently identified by the evidence as the property described in the indictment; for while it is impossible for us not to entertain grave doubts of the defendant's guilt of larceny (even though he be guilty of the statutory offense of receiving stolen goods), still the verdict upon this point is conclusive.

We pass by the point insisted upon by counsel for the plaintiff in error, that, as it is undisputed that the collar was not stolen, the proof fails to show the theft of a set of harness; for, in our opinion, the accused, under an indictment charging a theft of a whole set of harness, could be convicted, if it clearly appeared that he stole only a part of the set; just as one charged with the theft of property alleged to be worth $100 could be convicted if it appeared upon the trial that the property in question was worth but $75. Since it nowhere appears in the evidence that the harness of which the accused was in possession was either single harness, black harness, or leather harness, we do not think the evidence that the prosecutor lost and recovered *some* harness, which, so far as appears from the evidence, may have been part of a set of double harness, or may have been tan colored, or even made of cotton or hemp, sufficiently conforms to the descriptive averments of the indictment to authorize a conviction. Under a rule well settled, and frequently stated by the Supreme Court, the State simply failed to carry the burden devolving upon it of proving the material averments of the indictment as laid. In *Johnson* v. *State,* 119 *Ga.* 257 (45 S. E. 960), the judgment of the lower court, refusing a new trial, was reversed (though the Supreme Court held that the indictment was not subject to demurrer), because the indictment charged the defendant with stealing "one hundred and twenty dollars in paper money, to wit: two twenty-dollar bills, five ten-dollar bills, and six five-dollar bills," meaning thereby, under the decision in *Allen* v. *State,* 86 *Ga.* 399 (12 S. E. 651), that the money stolen was bank-bills, and the testimony failed to show whether the money was greenbacks, treasury notes, bank-bills, or gold or silver certificates. The prosecutor swore he did not know to which class of paper money the $120 (which was stolen from him and which he recovered) belonged. See, in this connection,

*Crenshaw* v. *State,* 64 *Ga.* 449; *Thompson* v. *State,* 92 *Ga.* 448 (17 S. E. 265); *Berry* v. *State,* 92 *Ga.* 47 (17 S. E. 1006); *Haupt* v. *State,* 108 *Ga.* 58 (34 S. E. 313, 75 Am. St. R. 19); *Hardy* v. *State,* 112 *Ga.* 18 (37 S. E. 95); *Paulk* v. *State,* 5 *Ga. App.* 573 (63 S. E. 659).

The solicitor-general relies upon the rulings in *Crawford* v. *State,* 94 *Ga.* 772 (21 S. E. 992), *Williams* v. *State,* 61 *Ga.* 417 (34 Am. R. 102), and *Patterson* v. *State,* 122 *Ga.* 587 (50 S. E. 489), in support of the proposition that the proof sufficiently conformed to the descriptive averments of the indictment to authorize the conviction of the defendant. The cases of *Crawford* and *Williams,* supra, were cases involving the violation of the statute forbidding the carrying of concealed weapons. These rulings are not in point, for it is readily to be seen that in enforcing one of the main purposes of the statute against carrying deadly weapons concealed, to wit, the preservation of the public peace, and incidentally the protection of human life, it is important that it shall be applied to the carrying of an inefficient pistol as well as to the carrying of one which is thoroughly effective and of the latest improved model. One who is carrying a broken pistol may know it is harmless, but if he should have a difficulty with another person, the latter, in all probability, would not know that the pistol could not shoot; and, for this reason, if he saw the carrier of the pistol with it in a threatening attitude, he might, as a matter of self-preservation, commit some act which he otherwise would not. The ruling in *Patterson* v. *State,* supra, is not in conflict with any of the decisions we have cited above; for, though the proof in *Patterson* v. *State* showed that the case and the works of the watch alleged to have been stolen had been temporarily separated by the jeweler who was repairing the watch, the accused took both the watch and the case, and therefore the proof of the property taken conformed with the descriptive averment of the indictment, which was, "one double-case silver watch."

Any confusion which exists in the case now before us is due to the fact that the prosecutor more than once testified that the harness he recovered was the same as that which he had lost; and, as is natural, the mind seeks the description furnished by the indictment, to ascertain the character of the harness alleged to have been stolen. However, the proposition that the allegations of the

indictment are not evidence is so elementary and palpable as to make even a statement to this effect superfluous; and yet there is nothing in this record which shows what kind of harness was stolen, except the description contained in the indictment. It is true the prosecutor says the harness recovered was identical with the harness he had lost. But he does not say that the harness he lost was single harness, black harness, or leather harness. It might have been sufficient if the State had described the stolen property simply as a "set of harness," though we are inclined to the opinion that in that event the defendant might by demurrer have demanded a fuller description. But certainly, having elected to identify the harness by terms of description, the State was required to prove the marks of identification which it had itself selected. "Where there is a necessary allegation which can not be rejected, yet the pleader makes it unnecessarily minute in the way of description, the proof must satisfy the description as well as the main part, since the one is essential to the identity of the other." Bishop's Crim. Pl. §§ 324-5.

In *Johnson* v. *State,* 127 *Ga.* 277 (56 S. E. 420), the accusation charged the defendant with unlawfully assaulting and beating the person of one B. with a pocket-knife. The evidence showed that the accused tore B.'s clothing and held him with his left hand (thus committing the offense of assault and battery), but did not strike him with a knife; and the Supreme Court held that the evidence did not authorize a finding that the defendant was guilty of the offense of assault and battery. The ruling was based upon the decision in *Fulford* v. *State,* 50 *Ga.* 591, in which Judge Trippe, after quoting the rule as laid down in Starkie on Evidence, and by Bishop, Chitty, and Phillips, holds that averments of an indictment may be rejected as surplusage only when they concern facts disconnected with the offense. To the same effect was the prior ruling of the Circuit Court of the United States in the case of United States *v.* Brown, 3 McLean, 233 (Fed. Cas. 14666). In that case the indictment charged the postmaster with stealing a letter containing certain bank notes. It was held that the averments as to the bank notes might have been omitted, and that the offense could have been properly charged without those words, but that, being in, they must be proved. In the *Fulford* case Judge Trippe says: "Take this case. It was not necessary that the

pleader should have stated the acts of the defendant which constituted his 'aiding and abetting,' or to define how it was done. The 'aiding and abetting' was an essential averment. The defendant was charged with so doing 'by pushing, striking, assaulting and threatening the said J. A. Conway.' He was put on notice that it would be proved on him that he did these things. He proposes to meet the charge and show that he did not push, strike, assault or threaten the said Conway. The aiding and abetting may be made out by proving many other ways in which it may be done, totally foreign to those set forth in the indictment. The prosecution, knowing this, proposes to strike out all these descriptive averments and leave an open field for any and all proof of any and all forms or ways in which the aiding and abetting may be shown. This would be permitting a defendant to be called upon to meet a charge specifically made in one form, and then allow him to be convicted by a change of the indictment on proof of acts totally distinct from those of which he was notified." In the case at bar the defendant was called upon to meet the charge of stealing a set of single black-leather harness. Construing the evidence most favorably to the State, he was convicted of stealing some harness, which, so far as appears from the record, may have been double, white-cotton harness, and as was said by Judge Trippe in the *Fulford* case, supra, "We do not think it can be done on principle or authority."                              *Judgment reversed.*

HILL, C. J., dissenting. I think the set of harness, as described in the indictment, was sufficiently identified by the evidence. There was no variance between the description given of the harness in the indictment and the description in the evidence, and there could be **no** reasonable mistake as to the identity.