SMITH *v.* THE STATE.

No. 12130. JANUARY 13, 1938.

366

*Dorsey Davis* and *Rupert A. Brown,* for plaintiff in error.

*Clarence E. Adams, solicitor,* contra.

ATKINSON, Presiding Justice.   In 14 R. C. L. 206, § 50, it is

said: "It is the well-established general rule that to make a variance between allegations in an indictment or information and the proof fatal, it must be material and prejudicial; and this rule is emphasized in some jurisdictions by statute. The charge of variance, to be sustained, must have reference to some matter essential to the indictment or information, and, in general, the descriptive averments of the mode in which an offense has been committed are not required to be strictly proved, if in substance the evidence supports the allegations, though it has been held that where a person or thing to be mentioned in an indictment is described with circumstances of more particularity than is requisite, those circumstances must be proved as alleged, otherwise it would not appear that the person or thing is the same described." In 8 R. C. L. 143, § 128, it is said: "The prohibition of the ancient principle of the common law and the constitutional provisions declaratory thereof, against a second jeopardy, apply only to a second prosecution for the identical act and crime both in law and fact for which the first prosecution was instituted." In 22 Encyclopædia of Pleading and Practice, 532, 557, it is said: "The rule that the allegations and the proofs must not be variant must be observed in criminal proceedings no less than in civil actions at law and suits in equity, or the defendant will be entitled to an acquittal or will, if the fault be on his side, fail in his defense. . . The rule that the allegations and proof must correspond is intended to answer the double purpose of distinctly and specifically advising the opposite party of what he is called upon to answer, so as to enable him properly to make out his case and to prevent his being taken by surprise in the testimony at the trial, and of preserving an unerring record of the cause of action as a protection against another proceeding based upon the same cause." In 16 C. J. 243, § 380, it is said: "The effect of a material variance between the allegations of the indictment and the proof is to entitle defendant to an acquittal on the particular indictment, but he is still liable to be tried for his crime."

Cases showing a positive variance between the proof and the description of the stolen goods alleged in the indictment, such as *Crenshaw* v. *State*, 64 *Ga.* 449, where an indictment charged the stealing of a hog marked by "a swallow fork in the right ear and a smooth crop in the left ear," and the description proved at the trial

showed the left ear bore the swallow fork and the right ear the smooth crop, will be omitted, because the instant case is not of that character. It is a case of omission of evidence to prove a material descriptive averment alleged in the accusation. In *Watson* v. *State,* 64 *Ga.* 61 (2), this court held: "Though the indictment need not allege that the money fraudulently converted by the defendant was lawful currency of the United States, under section 4424 of the Code, yet, if alleged, the description must be proved as laid; and therefore proof that money, without more, was so converted will not support a conviction under such an indictment." In *Hardy* v. *State,* 112 *Ga.* 18 (37 S. E. 95), it was held: "Where the indictment charged the accused with the larceny of a 'fawn-colored Jersey heifer about eighteen months old,' and the proof showed the larceny of a fawn-colored heifer, this was a fatal variance." In *McLendon* v. *State,* 121 *Ga.* 158 (48 S. E. 902), it was held: "In order to sustain a conviction of larceny, the evidence must make out the description of the stolen property as laid in the indictment or accusation, although such description may have been unnecessarily minute." In the opinion it was said: "The property alleged to have been stolen was described in the accusation as 'one box of Sweep Stakes tobacco, five lbs. Dukes Mixture smoking tobacco, and one 19-lb. sack Capitola flour.' . . The evidence showed the theft of some flour and tobacco, but there was absolutely nothing to show that the goods were of the brands or kinds set out in the accusation. We think it clear that the State failed to make out its case. It is essential to an indictment or accusation for larceny that the stolen goods be described with certainty. It may be that the accusation in the present case described them with unnecessary particularity, but, this having been done, the case should have been proved as laid. 'If a necessary allegation is made unnecessarily minute in description, the proof must satisfy the descriptive as well as main part, since the one is essential to the identity of the other.' 1 Bish. New Crim. Proc. § 485. See also Clark, Crim. Proc. 182." In *Holden* v. *State,* 144 *Ga.* 338 (87 S. E. 27), where the indictment charged the accused "killed an infant male child, the child of Dovie Cochran, whose name is unknown to the grand jury," and on the trial there was no evidence as to the sex of the child alleged to have been killed, the failure to prove the identity of the child as laid in the indict-

ment was held cause for a reversal. The foregoing views were several times expressed in *Gully* v. *State,* 116 *Ga.* 527 (42 S. E. 790) ; though the question there under consideration was upon a special plea of former acquittal, and not, as in the present case, whether the descriptive averments in the accusation were supported by the evidence.

In *Moore* v. *State,* 13 *Ga. App.* 15 (78 S. E. 772), it was held: "A conviction of larceny of property described in the indictment as 'one set of single black-leather buggy harness' is not supported by proof of the larceny of a set of harness not in any way identified in the evidence as being either black in color or made of leather. The fact that the prosecutor identified the harness found by him in the possession of the accused as the harness he had lost could not serve to identify it as the harness described in the indictment, in the absence of testimony indicating that the harness lost and recovered was black leather buggy harness." In *Southern Express Co.* v. *State,* 23 *Ga. App.* 67 (2) (97 S. E. 550), it was held: "Although it may not be necessary, in an accusation based upon the above-mentioned section, to name the agent of the express company who delivered the liquor, yet when the name is alleged it becomes 'descriptive of the identity of that which is legally essential to the claim or charge,' and can not be rejected as surplusage, but must be proved as alleged." In *Simpson* v. *State,* 35 *Ga. App.* 592 (134 S. E. 328), where the indictment charged the accused with the offense of larceny from the house, alleging that defendants fraudulently and privately took and carried away 200 bushels of "short staple cottonseed," and on the trial the State failed to prove that the seed alleged to have been stolen were "short staple," such failure was held a fatal variance. In *Hightower* v. *State,* 39 *Ga. App.* 674 (2) (148 S. E. 300), it was held: "If the prosecutor states the offense with unnecessary particularity, he will be bound by that statement and must prove it as laid." In *Youngblood* v. *State,* 40 *Ga. App.* 514 (150 S. E. 457), where the indictment charged the accused with breaking and entering a railroad freight-car with intent to steal, and described the car as "marked 'Frisco No. 130476,'" and there was no evidence that the car referred to in the testimony at the trial as the car which was broken and entered was marked "Frisco," the verdict of guilty was unauthorized. In *Wright* v. *State,* 52 *Ga. App.* 202 (182 S.

E. 862), where the indictment charged the larceny of "one certain automobile sedan, Plymouth make, 1934 model, *motor No. P. E.* 5369, gun-metal color, the . . property of Miss Johnnie Roberts," and the evidence showed the automobile was a Plymouth sedan of gun-metal color, motor number *P. C.* 5369, and the property of Miss Johnnie Roberts, this was held to be a fatal variance. Applying the foregoing principles, the charge made in the accusation of larceny of two chickens, one described as "1 white plymouth rock pullet" and the other "1 dark-barred plymouth rock pullet," is not supported by proof of larceny of two chickens one of them being "a dominecker" and the other "a white-barred rock," there being no proof of alleged sex of the chickens. Neither would such proof and additional testimony of the prosecutor that he saw defendant "pick up two chickens" and place one under each side of his coat, and upon being accosted he "threw up his hands and the chickens fell from under his coat," support the charge. Comparing the allegations with the evidence, there was such variance between the allegations and proof as to render the conviction illegal and demand a new trial. The foregoing sufficiently answers the question propounded by the Court of Appeals.

*All the Justices concur, except Bell, Justice, who dissents.*

JENKINS, Justice, concurring specially. I think that the conclusion arrived at in the majority opinion is necessitated by the authorities there cited, and I therefore of necessity concur. It is my opinion, however, that the rules first established by this court and followed by the Court of Appeals are to some extent fundamentally unsound, and should be modified. It is not my view that a defendant should ever be deprived of any portion of the guaranties given by the bill of rights. It is generally understood that it was because of the understanding that they would be immediately embedded within the constitution by amendment as a part of the fundamental law, that the fight for the adoption of the constitution was carried to success. Each and every one of these guaranties constitutes a landmark in the age-old battle against the tyranny of rulers and for the establishment of human liberty. They are bought with the blood of our forefathers, and should not be abolished or impaired. The administration of justice by and for a free people must be in accordance with established rules, and the landmarks set to mark the way are more than tech-

nicalities. Under our constitution, no court can ever sit in star-chamber session to impose its unbridled will. But the history of our forebears does record a star chamber, where those so unfortunate as to incur the ill-will of their rulers were subjected to trial upon undisclosed charges, and sentenced upon the secret testimony of unknown witnesses. Thus, following the lead of the Federal constitution, we find within our own organic law this provision: "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel; shall be furnished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded; shall have compulsory process to obtain the testimony of his own witnesses; shall be confronted with the witnesses testifying against him; and shall have a public and speedy trial by an impartial jury." Constitution, article 1, section 1, paragraph 5 (Code, § 2-105). As is recognized by Justice Atkinson in the majority opinion: "The rule that the allegations and proof must correspond is intended to answer the double purpose of distinctly and specifically advising the opposite party of what he is called upon to answer, so as to enable him properly to make out his case and to prevent his being taken by surprise in the testimony at the trial, and of preserving an unerring record of the cause of action as a protection against another proceeding based upon the same cause." I agree with the reasoning of Justice Bell, as formulated by this court in *Gully* v. *State*, 116 *Ga.* 527 (supra), to the extent that were this a case presenting a plea of former acquittal or former conviction, then and in that event it would be possible to look not merely to the indictment but to the proof as well, in order to ascertain if both offenses were founded upon the same act. If in that sort of proceeding this is shown to be true, as stated in the *Gully* case, supra, then "an acquittal under the first indictment would be a bar to a prosecution under the second, *notwithstanding the fact that there could not have been a conviction under the first indictment for the reason that the proof offered in support of it failed to establish allegations descriptive of the offense, ordinarily immaterial but which the pleader had made material by averment."* (Italics by the writer.) The instant case, however, deals not with a plea of former acquittal or former conviction, but presents the question as to whether the conviction at the original trial should

be set aside because the allegata and probata do not correspond. Under what is said in the *Gully* case and numerous other cases, there could not be a legal conviction, because of the failure to prove as pleaded averments "ordinarily immaterial, but which the pleader had made material by averment." See also *Moore* v. *State,* 13 *Ga. App.* 15 (supra). Accordingly, I am forced, as I see it, to concur in the majority opinion, not because I agree as to the soundness of those rulings, but because, being myself unable to distinguish them, I am bound thereby. I wish, however, to record my personal opinion that the precedents referred to should be modified and to some extent overruled.

If, as recognized in the majority opinion, the purpose of the indictment is to put the defendant on notice of the particular offense of which he is charged so that he may prepare his defense, and to preserve an unerring record of the proceedings as a protection against another indictment on the same charge, and if the indictment and the proved allegations are sufficient to do both of these things, it would not seem that the mere fact that the indictment may contain some unproved additional descriptive averment, "unnecessarily minute," made "with unnecessary particularity," which does not constitute "an essential element of the offense" and is "immaterial," and which therefore serves no purpose whatever in meeting either of the two stated requirements of a valid indictment, could be taken to avoid a conviction thereunder. All such "immaterial" and "unnecessary" averments would seem to amount to nothing more than mere surplusage; and if so, I am unable to follow the process of reasoning which holds that the mere inclusion of any such trivial, immaterial, and useless thing causes it to thereby become vital and material to an otherwise full, clear, and valid indictment. If the averment be one which it is useless to state, it remains useless even if stated. An immaterial thing, so long as in a changing world it remains in fact immaterial, is not changed in quality by its mere statement. Wishes can not be made into horses by their mere expression. If it should be shown that the inclusion of some so-called immaterial fact could work harm to the defendant, then it would follow that the fact was not immaterial. The "immaterial" neither helps nor harms. For these reasons, I think that the mere omission to prove some trivial, immaterial, additional fact, which has been set forth

in an otherwise clear, full, and valid indictment, should not operate to set free one who has been tried and convicted thereunder. This special concurrence suggests a modification of those decisions avoiding convictions by reason of the omission to prove unnecessary and immaterial averments, but does not deal with cases where the allegata and probata are in positive variance.

BELL, Justice, dissenting. The question is whether a mere failure to prove the allegation as to the sex of the chickens alleged to have been stolen would constitute a fatal variance and demand a new trial, "in that (1) the defendant could again be tried and convicted of the same offense under another indictment which differed in matters of essential description, or (2) that the defendant would thereby be deprived of information as to the charge against which he was required by the indictment to defend." In considering both subdivisions of the question, effect must be given to the facts that the defendant in his statement admitted his presence at the time and place of the alleged theft, and that, aside from his contention that the prosecutor "threw a gun on him," he merely denied that he had taken any chickens, as testified by the prosecutor.

1. In *McLendon* v. *State,* 121 *Ga.* 158 (supra), it was held: "In order to sustain a conviction of larceny, the evidence must make out the description of the stolen property as laid in the indictment or accusation, although such description may have been unnecessarily minute." In the opinion it was said: "Were the rule otherwise, one could be convicted upon the same evidence under several indictments which differed in matters of essential description. Jeopardy under one such indictment is no bar to a prosecution under another, and more than one conviction for the same offense is prevented by the rule above laid down. Another reason for the rule is that the accused is entitled to information as to the charge against which he must defend; and the essential averments of the indictment must be proved as laid, in order to show the identity of the offense proved with that charged." In the instant case the sex of the chickens was not an essential element of the offense, and might have been omitted from the description in the indictment, provided the property was otherwise sufficiently described. In *Gully* v. *State,* 116 *Ga.* 527 (supra), it was said: "To entitle the accused to plead successfully former acquittal the offenses charged in the two prosecutions must have been the same

in law and in fact. . . If the prosecution under the second indictment involves the same transaction which was referred to in the former indictment, and it was or might have properly been the subject of investigation under that indictment, an acquittal or conviction under the former indictment would be a bar to a prosecution under the last indictment. . . If the two prosecutions really involve the same transaction, the fact that the offense charged in the second indictment is by name a different offense from that which is set forth in the first does not prevent a judgment under the first from being a bar to the second prosecution. *Holt* v. *State* [38 *Ga.* 187], supra. On the other hand, if the two offenses are nominally the same but are substantially different, a judgment in one will not be a bar to a prosecution in the other. *Brown* v. *State,* 85 *Ga.* 713 (3) [11 S. E. 831]. It has also been held that where a person has been put in jeopardy of a conviction of an offense which is a necessary element in and constitutes an essential part of another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded upon the same act. . . In determining whether the two offenses are identical we must not look to the indictment alone or to the proof alone, but to both the proof and the indictment. If the evidence offered under the issue formed upon the special plea shows that no other transaction than that sought to be investigated under the second indictment could have properly been the subject of investigation under the first, then an acquittal under the first indictment would be a bar to a prosecution under the second, notwithstanding the fact that there could not have been a conviction under the first indictment, for the reason that the proof offered in support of it failed to establish allegations descriptive of the offense, ordinarily immaterial, but which the pleader had made material by averment." See also *Lock* v. *State,* 122 *Ga.* 730 (2) (50 S. E. 932) ; *Ingram* v. *State,* 124 *Ga.* 448 (52 S. E. 759) ; *Burch* v. *State,* 4 *Ga. App.* 384 (61 S. E. 503) ; *Whitaker* v. *State,* 9 *Ga. App.* 213 (2) (70 S. E. 990). Under the principles ruled in these decisions, if the defendant in the instant case should be again indicted for the offense of larceny arising out of the same transaction, "the accused could successfully defeat a prosecution under the second indictment by identifying the offense charged in that indictment with the offense which was or could have been made the subject of investigation

under the first indictment" (*Lock* v. *State,* supra), the case being one in which the State merely "failed to establish allegations descriptive of the offense, ordinarily immaterial but which the pleader had made material by averment." *Gully* v. *State,* supra.

2. Under the facts of this case, the failure of the State to prove the allegation as to the sex of the chickens did not render the defendant's conviction illegal or demand a new trial upon the ground that the defendant was deprived of information as to the charge against him "which he was required by the indictment to defend." This could not be true in any case where there is a mere failure to prove an allegation of which it can only be said that it is "unnecessarily minute," although in some circumstances, as in the case of *McLendon* v. *State,* supra, it might be held that the conviction was illegal because the State "failed to make out its case" or prove the case as laid. The question certified and the statement accompanying it affirmatively disclose that the defendant was not hurt by any failure to supply him with information as to the charge against which he was required to defend. He admitted his presence at the time and place of the alleged offense, and, so far as here material, merely denied "that he had any chickens," as claimed by the prosecutor. If he had made no statement whatever, it might be that he should have been acquitted because of the failure of the State to prove the offense as charged in the indictment; but in view of the sole and exclusive issue developed upon the trial, the omission to prove the "unnecessarily minute" descriptive allegation did not constitute a *fatal* variance and was harmless. For the reasons stated the writer is of the opinion that the questions certified by the Court of Appeals should be answered in the negative, and not in the affirmative as held by the majority. The views herein expressed are deemed not to be in conflict with any of the decisions cited in the majority opinion or with any other decision by this court.