### 32695. LOOMIS v. EDWARDS, Judge.

DECIDED OCTOBER 12, 1949. REHEARING DENIED NOVEMBER 8, 1949.

*Homer L. Loomis,* for petitioner.

*Paul Webb, Solicitor-General, William Hall,* for defendants.

GARDNER, J. 1. (a) Extraordinary motions for a new trial are not favored. *Coggeshall* v. *Park,* 162 *Ga.* 78 (132 S. E. 632). This principle is elementary. There are decisions to the same effect too numerous to cite. We cite the *Coggeshall* case because it involves other questions that are pertinent here.

(b) It is contended by the applicant that, since the law provides that a judge in the court below exercise discretion in passing upon an extraordinary motion for a new trial, the trial judge in the instant case committed reversible error in refusing to entertain the extraordinary motion. This contention is not sound as a matter of law. If the extraordinary motion is palpably without merit, taking into consideration the extraordinary motion together with the whole record of the case, the judge may refuse to entertain the extraordinary motion as a matter of law. In such a case, when the trial judge does so refuse, as in the instant case, and the applicant in the extraordinary motion presents such trial judge with a bill of exceptions to the ruling refusing to entertain such extraordinary motion, which bill of exceptions the trial judge refuses to certify and where, as here, a petition for the writ of mandamus nisi under the Code, § 6-910, is presented to this court to compel the judge to certify to such bill of

exceptions, then this court will look to the merits of the extraordinary motion and the whole record in the case to determine whether this court will issue such mandamus nisi requiring the trial judge to show cause why he should not certify such bill of exceptions. If this court should determine from the record in the extraordinary motion and the original case that the extraordinary motion is without merit, and the trial judge was correct in so determining, then this court will refuse to grant the petition of the applicant for mandamus nisi for the trial judge to show cause why he should not certify the bill of exceptions. This court will not as a matter of law be compelled first to grant the mandamus nisi. In *Harris* v. *Roan,* 119 *Ga.* 379 (5, 6) (46 S. E. 433), the court said: "When an alleged extraordinary motion for a new trial is entirely without merit, it is proper for the judge to decline to entertain the same and to refuse to grant a rule nisi thereon. . . This court will not by mandamus compel a judge to certify a bill of exceptions assigning error upon the refusal of the judge to entertain an extraordinary motion for a new trial and grant a rule nisi thereon, when it appears that such motion is without merit. *Malone* v. *Hopkins,* 49 *Ga.* 221; *Cox* v. *Hillyer,* 65 *Ga.* 57; *Hanye* v. *Candler,* 99 *Ga.* 214; *White* v. *Butt,* 102 *Ga.* 552; *Perry* v. *Candler,* 102 *Ga.* 368." See also *Rawlins* v. *Mitchell,* 127 *Ga.* 24, 28 (55 S. E. 958); *Landers* v. *Cobb,* 150 *Ga.* 80 (102 S. E. 428). There are other decisions to the same effect. We deem it unnecessary to cite them. In view of what we have said, see also *Bivins* v. *McDonald,* 50 *Ga. App.* 299 (177 S. E. 829). While that case deals with mandamus absolute, it throws much light on other questions discussed above. See *Henderson* v. *Maddox,* 40 *Ga. App.* 91 (149 S. E. 59).

(c) The gist of the extraordinary motion is that the names of Clarence H. Kight and Douglas Watson were known to the grand jury at the time the indictment was returned. Nevertheless the indictment alleged that the last two were unknown and for this reason the applicant was illegally convicted, for if the names of the corioters were known to the grand jury, the grand jury was as a matter of law required to insert their names in the indictment as corioters with the three indicted. In Leverkuhn v. United States, 297 Fed. 590 (1), the court held that, where an indictment

for conspiracy sufficiently informed the accused of the charge, it was not reversible error to reject evidence that the names of persons with whom the accused conspired, alleged in the indictment to be unknown to the grand jury, were known to that body. In 2 Wharton's Criminal Law (12th Ed.), p. 2199, § 1869, it is said: "It is enough, if, in addition to the defendant, there be two or more persons, known or unknown, alleged to have acted as corioters." The same authority (p. 1933, § 1558), states: "It is in the discretion of the prosecution to include only as many of the alleged coconspirators in the indictment as it may deem expedient; and the nonjoinder of any such, provided there is enough alleged on the record to constitute the offense aliunde, is not matter for exception, although the party omitted was a particeps criminis." Reverting to Leverkuhn v. United States, supra, the court held that an indictment for conspiracy to possess, sell, and transport intoxicating liquor sufficiently informed the defendant of the nature and cause of the accusation against him, though the persons with whom the accused was alleged to have conspired, alleged in the indictment to be unknown to the grand jury, were known to that body. And on page 593 the court said: "Furthermore, even if the ruling in question was erroneous, it is not a ground for reversing the judgment of conviction, as . . the error was not one which affected the substantial rights of the accused." In that decision it was held that an allegation in the indictment that names of coconspirators were unknown to the grand jury and proof that they were known to that body, is not a material variance and the court did not err in rejecting evidence that the names of the persons with whom the accused conspired were known to the grand jury at and before the return of the indictment, the court holding: "A court would not be chargeable with reversible error for rejecting offered evidence which would serve no other purpose than to give rise to an immaterial variance. 12 Corpus Juris. 627." In the instant case the alleged irregularity in the indictment in alleging that the corioters, Clarence H. Kight and Douglas Watson, were unknown to the grand jury, though allegedly their names were known to that body at the time of and before the indictment was returned, is one of form rather than of substance. See *Martin* v. *State*, 115 *Ga.* 255, 258 (41 S. E. 576). Defects and

irregularities in an indictment cannot be complained of in a motion for new trial. Such must be taken advantage of by demurrer, plea in abatement, or plea in bar. Of course this carries with it the presumption that the facts were, when the case was called to trial, sufficiently known to the accused to enable him to file a plea in abatement or a plea in bar. We will point out hereinafter that the applicant knew or in the exercise of ordinary diligence could have known, if any there were, facts sufficient on which to base a dilatory plea. The indictment in the instant case was good on its face, since it is essential that two or more persons be named in the indictment to constitute the offense of riot. *Martin* v. *State,* supra. The same decision holds to the effect that the accused waived any defect in the indictment which went to its form and not to its substance. That rule is applicable in the instant case.

Counsel for the applicant relies strongly on the case of *Martin* v. *State,* supra, and *Ray* v. *State,* 4 *Ga. App.* 67, 69 (60 S. E. 816). We have studied these cases carefully and are of the opinion that nothing therein held is in conflict with our opinion in the instant case. The only question in the *Martin* case was that the indictment named two specified persons as guilty of riot, together "with others." There was no special demurrer calling for the names of the others. It was there ruled that this was a matter of form and not of substance, and since there was no special demurrer calling for the names of others, the indictment was good and the conviction would be upheld. There was no question in that case that after the requisite number essential to set forth the crime of riot, together with others unknown to the grand jury, was or was not involved. As to *Ray* v. *State,* supra, the indictment alleged that the owner of the property was unknown to the grand jury. The court held that at the time the indictment was returned the grand jury were authorized to allege that the brand, mark and ownership of the property were unknown to them. But that between the return of the indictment and the trial, the State had secured sufficient evidence to authorize the jury to find that the accused was the one who stole the property. That is not this case. For the allegation of ownership of the property is essential in an indictment charging theft and the owner must be alleged or it must be alleged in

lieu thereof that the owner of the property was unknown. Such are allegations of substance and not of form, as in the instant case. In this case all the essentials necessary to constitute the offense of riot were alleged, and the allegation that "other persons whose names are to the grand jury unknown" was merely thrown in and amounted only to surplusage. Such an allegation went to the form of the indictment and not to the substance. And even conceding that the grand jury did know the names of the others which were alleged to be unknown, such could not prejudice the rights of the applicant. As we have heretofore pointed out, founded, we think, on good authority, alleging that the others were unknown amounted to no more than not mentioning others at all. There might have been a hundred or more engaged in the riot, together with the applicant and Burke. It cannot, we think, be successfully contended that the State would be required to name all of them in the indictment. They might choose to indict two only, or any number more than two.

(d) It would seem from the record in the original case that the affidavits of the accused and his counsel are discredited by that record and from that record the facts regarding alleged newly discovered evidence were known to the accused at, before, and during the trial and before the regular motion for a new trial as amended was filed. It appears from the brief of evidence in the original case that a document identified as defendant's Exhibit number 9, page 417 of the brief of evidence, was introduced, to the effect that Clarence Kight stated that on December 13, 1946, he appeared before the Fulton County grand jury and testified that he and J. R. Childers on or about October 28, 1946, accosted the victim, Clifford Hines, and struck him twice with a blackjack. George Thomas Esq., who represented Burke, was sworn as a witness in the main trial and testified in substance that at the time Clarence Kight made the statements in Exhibit 9, supra, Homer Loomis Jr. was present. The witness Thomas testified that Clarence Kight told him certain things with reference to the defendant's Exhibit 9 and that the witness dictated the statements made by Clarence Kight to his secretary and that Clarence Kight told the witness Thomas that he would not sign it, but would testify to that on the trial. Clarence Kight requested a copy and witness Thomas gave it to him.

Clarence Kight testified in the main trial that he did go around to the witness Thomas' office and made certain statements in the presence of the defendant Loomis, Emory Burke, Mr. Thomas, and Mr. Thomas' secretary and that Homer Loomis Jr., the applicant, worded it and that the secretary of attorney Thomas filled it out. Kight testified that he told attorney Thomas on December 13, 1946, that he had appeared before the Fulton County grand jury and testified that he and J. R. Childers, on the date of the occasion in question, did beat and accost a Negro by the name of Clifford Hines, and that that statement was voluntarily made. It thus appears from the record in the original case that the applicant knew of the alleged newly discovered evidence as to Kight. Certainly, it is a reasonable inference that if the applicant knew it, he informed his counsel of it before the trial, or during the trial before his original amended motion for a new trial was prepared and filed.

The writer of this opinion participated in and concurred in the affirmance of the conviction of the applicant in the judgment of *Loomis* v. *State*, 78 *Ga. App.* 336, and there is on file in this court the brief and argument of counsel for the applicant in that case, who is the same counsel for the applicant in the instant case. Counsel for the applicant then argued: "Among other things Kight admitted he had told Mr. Thomas, was that he testified before the grand jury, which returned the indictment, that it was he and Childers that had beaten up Hines, although the grand jury in its indictment did not name him as one involved in the beating or as one whose name was known to that body. . . Kight freely admitted on the witness stand that he had testified before the grand jury, while they were considering the returning of the indictment herein, and that he had told them of his beating of Hines. Yet that same grand jury, in charging the offense of riot against the plaintiff in error, charged that he had acted jointly in the beating of Hines with certain named persons and others unknown to the grand jury. Thus Kight was in neither category of the alleged rioters referred to in the indictment. He was not one of the named persons; and he was not unknown to the grand jury as the perpetrator of Hines' beating.

"The law is clear that in such a situation, when the grand jury knows the name of one of the alleged rioters, and yet charges

that the accused jointly did the acts, alleged to constitute the riot, with certain named persons (not including the one so known to the grand jury) and others unknown to that body, the accused is entitled to acquittal. *Nelms* v. *State*, 64 *Ga.* 466, 468; *Martin* v. *State*, 115 *Ga.* 255, 257."

Clarence Kight testified on the original trial: "I did go around to Mr. George Thomas' office, and I made certain statements in the presence of the defendant Loomis, Emory Burke, Mr. Thomas and Mr. Thomas' secretary. . . Your son (Homer Loomis Jr.) worded it, and his (Thomas') secretary filled it out. . . I admit that I said I hit the Negro. I wouldn't say that I didn't make any other statements. . . I told Mr. Thomas in his office in Atlanta that on Friday, December 13, 1946, I had appeared before the Fulton County grand jury and testified on oath that J. R. Childers and I on or about October 28, 1946, in an alley in the rear of 313 Formwalt Street did beat and accost a Negro by the name of Clifford Hines. That statement was voluntarily made." It appears that accused knew of the allegedly newly discovered evidence before the trial, and it appears that both accused and his counsel were apprised thereof during the trial.

In this connection we might quote what Chief Justice Bleckley said in a similar situation in *McElmurray* v. *Blue*, 91 *Ga.* 509, 513 (18 S. E. 313): "From the brief of evidence we think it clearly appears that some of the material facts alleged to be newly discovered were known to the movant at the time of the trial. His affidavit that all of them were discovered afterwards is thus discredited and may be disregarded." In *Luce* v. *Evans*, 202 *Ga.* 48, 50 (41 S. E. 2d, 878), the Supreme Court held that the record in the original trial demonstrates the absence of any foundation for the contention that the accused and his counsel did not know of the allegedly newly discovered evidence before the trial and during the trial, and that the same could not have been discovered by the exercise of ordinary diligence. In *Williams* v. *State*, 192 *Ga.* 247, 254 (15 S. E. 2d, 219), said: "Extraordinary motions for new trial cannot be based upon matters that were known to the movant in time to have had them stated in his original motion." However, in the instant case the applicant and his attorney in special ground

19 of the amended motion for a new trial in the main case, division (a), § 5, page 148, deal with this same question. We will not quote this ground, but the applicant and his counsel in that ground took exception to a charge of the court and stated: "And the charge here complained of in effect permitted the jury to find the movant guilty of committing said assault and beating of Hines jointly with a person whose name was to the grand jury unknown. . ." The motion referred to the alleged unknown person, Clarence Kight and this ground further alleged that the uncontradicted testimony of Kight was that he discussed with attorney George Thomas in the latter's office the participation of Kight in the beating of Hines; and it is further alleged in this ground of the original motion that since the State called Kight as a witness in the original trial and in view of the testimony of Kight: "It is to be taken as a fact established in this case that the grand jury did know the name of said Kight as that of one of the participants in the said assault and beating of Hines and yet failed to charge the movant with having jointly committed the said act with him." In *King* v. *State*, 174 *Ga.* 432 (2) (163 S. E. 168), the court said that "an extraordinary motion for a new trial will not lie to review any of the grounds in the original motion for new trial." If there was a variance between the allegeta and the probata, it should have been properly in the original motion for a new trial and such cannot be a ground in an extraordinary motion for a new trial. *Perry* v. *Gunby*, 45 *Ga.* 101.

(e) The record in this case fails to show due diligence. According to the affidavits of Kight and Watson they were participes criminis with applicant in the commission of riot charged in the indictment. One of them, Kight, was actually sworn and cross-examined at the trial. (In fact he discloses in his testimony as above stated that he took part in the riot. The other witness, Watson, was present at the trial and was sworn, although not called as a witness. The applicant was present when attorney George Thomas questioned Kight. Kight seems to have talked with them very freely before the trial. It would appear that by the exercise of diligence they could have ascertained from either Watson or Kight what they now seek to urge as newly discovered evidence in the extraordinary motion). We mention this

merely to complete the whole picture. It is not mentioned for the purpose of conceding that, if the grand jury knew at the time the indictment was returned that Kight and Watson were participes criminis with applicant and knew their names, but in spite of this alleged that they were unknown to the grand jury, such would require a reversal. We have dealt with this contention hereinbefore.

(f) Counsel for the applicant in his brief argues interestingly, enthusiastically, and evidently with much research, his contention that the trial judge committed reversible error in not entertaining the extraordinary motion and in refusing the grant of a rule nisi thereon, and in refusing to sign the bill of exceptions presented to him complaining of Judge Edwards' ruling in regard to the extraordinary motion. We will call attention to the authorities which he cites and which we have studied. They are numerous. We cannot analyze each of the cases cited, but we will call attention to them. It is contended that the trial judge, since only one trial had been had, was possessed with full and unfettered discretion to grant the new trial sought by the extraordinary motion and to take all preliminary steps to that end. In this connection, our attention is called to *Central of Georgia Railroad* v. *O'Kelley*, 16 *Ga. App.* 594 (85 S. E. 938), *Savannah Electric Co.* v. *Lackens*, 12 *Ga. App.* 765, 767 (79 S. E. 53), *Kryder* v. *State*, 76 *Ga. App.* 546, 548 (46 S. E. 2d, 526), *Cox* v. *State*, 19 *Ga. App.* 283 (91 S. E. 422), *Harris* v. *Roan*, supra, and *Perry* v. *Hammock*, 75 *Ga. App.* 171 (42 S. E. 2d, 651). It is urged from these authorities that the call for the exercise of discretion in the instant case was urgent because the record in the extraordinary motion showed that the verdict in the first instance had been wrongfully obtained. We disagree with counsel in this respect, and the decisions to which he calls our attention warrant no such conclusion. Counsel for the applicant further goes on to argue and to call our attention to authorities relied on to the effect that the allegation, "others to the grand jury unknown" was a material part of the indictment. To sustain this position counsel cite: *Roughlin* v. *State*, 17 *Ga. App.* 205 (2) (86 S. E. 452); *Southern Express Co.* v. *State*, 23 *Ga. App.* 67 (97 S. E. 550); *Hightower* v. *State*, 39 *Ga. App.* 674 (148 S. E. 300); *Youngblood* v. *State*, 40 *Ga. App.* 514

(150 S. E. 457); *Kryder* v. *State*, supra; *Fulford* v. *State*, 50 *Ga.* 591; *Smith* v. *State*, 185 *Ga.* 365 (195 S. E. 144). We have dealt with this question hereinbefore. We disagree with counsel in his conclusion, and we are of the opinion that the decisions cited do not sustain his contentions. Counsel further contends that since the trial judge originally exercised his discretion in granting a rule nisi on the extraordinary motion, that he was without jurisdictional power to vacate the same ex parte in deference to an unsound rule of law, citing *Coggeshall* v. *Park*, supra. He also cites in support of this contention Code, §§ 81-113, 110-707. We cannot agree with counsel for the applicant in this contention. This is true for the reason that in passing upon whether or not an extraordinary motion shall be entertained, the trial judge will look to the merits to determine whether the extraordinary motion should be entertained. If, upon investigation of the merits, the trial judge should determine that the extraordinary motion is without merit, then he would have a right to refuse to entertain it, as we have hereinbefore pointed out; and if he had issued a rule nisi thereon and while the matter was within the breast of the court, and came to the conclusion that the rule nisi was improvidently granted, he could of his own motion vacate it and thereafter refuse to entertain the extraordinary motion. We have hereinbefore gone into this question. Counsel also cite *Cotton States Seed Company* v. *Macon, Dublin & Savannah R. Co.*, 23 *Ga. App.* 206 (98 S. E. 108), *Rawlins* v. *Mitchell*, and *Martin* v. *State*, supra. In this connection our attention is called to the contention that rioters are fellow principals, each of whom is liable for the acts of others, on the theory that riot is not the act of any one of the rioters, but is the act of all. Our attention is called, in this connection, to *Dixon* v. *State*, 105 *Ga.* 787 (31 S. E. 750); *Prince* v. *State*, 30 *Ga.* 27; *Martin* v. *State*, supra; *Lewis* v. *State*, 5 *Ga. App.* 496 (63 S. E. 570). Conceding that rioters are fellow principals each of whom is responsible for the acts of the others, on the theory that riot is not the act of any one of the rioters, still we are of the opinion that under the law of this State, by virtue of the decisions hereinbefore cited on the principle, not all the rioters need be joined in the indictment. Under the laws of this State it is provided that the offense of riot may be committed by two or more. Two are essential. The in-

dictment must allege the names of two or must allege the name of one and "others to the grand jury unknown." In the latter event the State must prove that the accused whose name is set out was engaged in a riot and must also prove that he was engaged in the commission of such offense with some other one or more whose names were to the grand jury unknown. In the former event where there are two rioters named, such would be a perfect indictment whether there was a third party or many others than the two named. For this reason the two named, if the proof warrants a conviction as to them, are guilty, and it is immaterial whether any of the many others are alleged to be unknown. The proof may show, in such event, that many others participated in the riot. This is our conception of the law of this State, as we have above pointed out, and we find nothing in any of the decisions of Georgia which holds to the contrary. It is interesting, in this connection, to read *Lewis* v. *State,* supra. In that case four persons were indicted for the offense of riot and there was no allegation in the indictment that there were others who participated in the riot, to the grand jury unknown. The four persons named were convicted on a joint trial. On certiorari to the superior court it was found that there was no evidence to convict three of the four. The superior court allowed the conviction to stand as to the other one convicted. This court reversed the judgment of the superior court and held that the conviction could not stand as to this one, since it took two or more persons to constitute the offense of riot. It therefore clearly appears from that opinion that there must be two and perhaps many more persons participating in a riot. In this connection our attention is called to *Roughlin* v. *State,* supra. Broadly speaking, there were two issues decided in that case. One was that the indictment was not sufficient as a matter of law to put the defendant upon notice of the crime charged against him. It cannot be successfully contended in the instant case that the indictment of riot did not fully inform the defendant of the crime charged against him. The other point in that case was that the indictment alleged that the accused administered chloroform to a patient through an agent who was not qualified to administer chloroform. There was a special demurrer filed to the indictment calling for the name of the one administering the chloro-

form. The court held that the accused was entitled to this information when called for by special demurrer. It was not ruled in that case that it was necessary to allege that the chloroform was administered by the accused through another. But since it was so alleged, the accused was entitled to the name of the person administering the chloroform at the instance of the accused. The facts in that case differentiate it from the instant case to the extent to show that it is not controlling here. Our attention is next called to *Johnson* v. *State*, 127 *Ga.* 277 (56 S. E. 420). The facts in that case differentiate it from the case at bar. Counsel call our attention to the decision in the main case of *Loomis* v. *State,* supra, wherein the court held that one person could not stage a riot; that it was necessary for the State to show that, if the person alleged to be unknown was known, the proof had to show, in order to warrant a conviction, that either one or the other of the persons alleged to be unknown participated in the offense named in the indictment. We cannot agree with this contention, under the facts of this record.

(h) It is further contended by counsel for the applicant that the rule of law relied on by the trial judge was inapplicable to most of the alleged new evidence and could in no event be decisive of the motion insofar as it is based on such alleged newly discovered evidence. Our attention is called to *Carey* v. *King,* 5 *Ga.* 75; *Perry* v. *Hammock,* supra; *Central of Georgia Railway Co.* v. *Harden,* 113 *Ga.* 453 (38 S. E. 949). There is nothing in those decisions under their facts to justify the contention of the applicant in this regard.

Counsel for the applicant further calls our attention to his contention that his extraordinary motion shows that the misconduct of the solicitor-general would require that the mandamus nisi be granted. He cites Canons of Professional Ethics (American Bar Association), and numerous foreign decisions which we will not here mention. Suffice it to say that, as to this contention, we are wholly at variance with the argument of counsel for the applicant.

When the extraordinary motion for a new trial was filed by the applicant, the trial judge issued a rule nisi directed to the Solicitor-General of the Atlanta Judicial Circuit to show cause why the extraordinary motion should not be granted. Thus, the

solicitor-general was brought into the proceedings on this extraordinary motion and remained actively therein throughout every step of the case, according to the record before us, including the writing of the final order dismissing the extraordinary motion for a new trial.

After the trial judge refused to sign the bill of exceptions based on the judgment dismissing the extraordinary motion for a new trial, and after an application for the writ of mandamus nisi was filed with this court, the Solicitor-General, Paul Webb, of the Atlanta Judicial Circuit and as the prosecutor of the special presentment under which Homer L. Loomis Jr., was convicted in the original case, *and in his right and also as amicus curiæ* made a motion for this court "to decline to entertain, refuse to grant a rule nisi, and to dismiss the application for mandamus [nisi] because it is palpably and entirely without merit. . ." In connection with the motion, the solicitor-general contains therein a brief and argument in support of the motion. In reply to this motion the attorney for the applicant made a motion to dismiss the motion of the solicitor-general. The argument for the applicant goes largely to the effect that the solicitor-general had no right to file a motion as *amicus curiæ*. Without going into the many decisions cited in support of the applicant's view, we decline to dismiss the motion of the solicitor-general. We are inclined to the opinion that the solicitor-general does not, as a matter of law, have a right to file a motion as amicus curiæ under the facts of this case. He does have the right, and we think it is his duty, under all the facts of this case, to file whatever pleadings he deems necessary on behalf of the State in the proceedings now before us regarding the merits of the application for the writ of mandamus nisi to this court. We therefore treat whatever reference is made to the solicitor-general in his individual right and as amicus curiæ as mere surplusage to the motion.

The petition for mandamus nisi is denied.

*Mandamus nisi denied. Sutton, C. J., MacIntyre, P. J., Townsend and Worrill, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. Assuming for the sake of argument that the trial judge had authority to vacate his order granting a nisi on the extraordinary motion for a new trial, and to do so

without affording movant a hearing on the question, I am of the opinion that the judge erred in refusing to grant a rule nisi "as a matter of law." The judge's order denying the rule nisi is as follows: "The defendant was convicted of the offense of riot, his motion for a new trial was denied and the Court of Appeals affirmed. *Loomis* v. *State*, 51 S. E. 2d, 33. An extraordinary motion was filed by the defendant. The indictment charges, 'Homer L. Loomis Jr., Emory C. Burke with the offense of riot for that said accused, . ., did jointly with J. R. Childers and other persons whose names are to the grand jurors unknown.' The defendant contends that this indictment was not a true bill of indictment in that 'other persons' referred to therein, to-wit: Clarence H. Kight and Douglas (Red) Watson, two of the principal rioters, were in fact known to the grand jurors. That he was unaware of this at time of trial and therefore deprived of a defense he was entitled to and which, when established on subsequent trial, would demand his acquittal. Counsel for the defendant insists that the following is the true rule of law here applicable: 'In an indictment the names of the persons injured, and of all others whose existence is legally essential to the charge, must be set forth, if known; it is, of course, material that they be precisely proved as laid, . ., and if the person be described as unknown, and if it be proved that he was known, the variance is fatal, and the prisoner will be acquitted.' Greenleaf on Law of Evidence (16th Ed.), Vol. 3, Section 22. He further contends that this rule has been approved of in Georgia in 115 *Ga.* 255; 84 *Ga.* 466; 5 *Ga. App.* 496 and 4 *Ga. App.* 67. The defendant contends that the names of all principal rioters actually present and participating in the offense of riot are essential to a description of the offense in the indictment as to one who shared with them a common intent but was not present at the commission of the riot. It is also the defendant's contention that the materiality of the allegation of the indictment—viz., that the names of other alleged rioters were unknown to the grand jurors —depends, for the purposes of this motion, not on what appears on the face of the indictment, but on what the proofs show the facts to have been; and that since the proofs show that, of those persons named in the indictment, only one (Childers) was an actual present participant and that, therefore, proof of the actual

presence of either Kight or Watson, or some other third person was necessary before a riot could have been found to have been committed, the proof, in consequence, showed that the allegation that the names of others (Kight and Watson, or others) were to the grand jurors unknown,—was a material allegation of the indictment. 'The object of an indictment is fairly to inform accused of the charge against him, so as to enable him to prepare his defense and avail himself of his conviction or acquittal as a protection against further prosecution for the same cause; and to inform the court of the facts alleged so that it may decide whether they are sufficient to support a conviction, if one is to be had. 42 C. J. S., p. 835, no. 7 (a). Where the name or other description of a victim of a crime or person other than accused connected therewith is not an essential part of the offense, the indictment need not name or otherwise describe such person; but where the identity of such a person forms a material part of the crime charged, the indictment should name or otherwise sufficiently describe him.' 42 C. J. S. no. 142 (a), p. 1048. 'The name of a third person connected with the offense, but not essential to its description, need not be set out or alleged to be un known, where the charge without such statement is sufficiently certain.' Id. In this State riot may be committed by any two persons and hence an indictment that charges a defendant together with one other named person with such an offense is sufficient and not subject to demurrer. See *Martin* v. *State*, 115 *Ga.* 257, wherein the court said: 'In the present case the indictment was good on its face, the offense being charged against two named persons.' Hence it was unnecessary, in so far as the validity of the indictment was concerned that the indictment include or make reference to *others unknown*. The defendant was fully apprised of the charge against him and it was not essential to the description of the offense that all parties connected therewith be set forth, the charge without such additional names being sufficiently certain. Since it is essential to the description of the offense of riot that at least two be included therein, it is necessary that at least two persons be jointly indicted, or one indicted charged with having committed the offense jointly with another. Had the defendant been so indicted alone and charged with having committed the offense of riot with another,

to the grand jurors unknown, and the proof had disclosed that the name of such other person was in fact known to the grand jurors, this would constitute a variance between the allegations and the proof. However, in the present case there was no such variance. The proof showed that the defendant together with one other named person, J. R. Childers, did commit the offense of riot. While it is true that the proof further showed that Watson and Kight also participated therein, and, had it been further established that their names were in fact known to the grand jurors, although the indictment alleged that they were unknown, this would not of itself have constituted a fatal variance, since such allegation was not essential to a valid description of the offense of riot, and furthermore this fact of itself, if believed by the jury, would not have demanded an acquittal. A conspiracy must also be committed by at least two persons, and it has been held that 'the names of the persons with whom the indicted person conspired are not descriptive of the offense.' 15 C. J. S. no. 82, page 1116, note 21. The mere proof that others are likewise equally guilty of the offense charged will not absolve the defendant on trial of his criminal responsibility for his participation. Therefore it is considered, ordered and adjudged that the extraordinary motion for a new trial, as amended, is without merit and the court declines to entertain said motion and refuses to grant a rule *nisi*. This decision is made as a matter of law, and not as a matter of the exercise of discretion. It is further ordered that all previous orders entered by the court in connection with said motion be, and the same are hereby revoked and vacated." This order shows that the judge did not exercise his discretion but that he in effect ruled as a matter of law that he was required to refuse the nisi without the exercise of his discretion. The majority opinion holds that the judge was correct in his ruling of law and in effect holds that if he had exercised his discretion he would have been authorized to deny the nisi. If the judge was wrong in his ruling on the law, and exercised no discretion, there is no other question before us to be decided. We are not called upon to examine a 510 page record to ascertain whether a denial of a nisi in the court's discretion would have been authorized if the court had made such a ruling. It is incumbent upon us now to rule on the judge's ruling of law. If he

was wrong, we must say so now, and it will be a useless waste of time and energy to require the judge to certify the bill of exceptions so that the case may be brought back here at both trouble and expense, for the determination of the very same question we should now rule on. My conclusion is that the judge was wrong in not exercising a discretion on the question of granting a nisi, and that without further useless action, direction should be given that he exercise his judicial discretion on all the grounds of the extraordinary motion, there being two included therein, one, the contention that the indictment was fraudulent, and two, the alleged misconduct of prosecuting officials. I think the court erred in his ruling on the law for the following reasons: In *Martin v. State*, 115 *Ga.* 255 (41 S. E. 576), the court stated, speaking of the indictment: "That it was subject to special demurrer for not naming the other persons referred to in the indictment as having participated in the riot, or not stating that their names were unknown, does not admit of question." The indictment in this case alleged that others were unknown so it was not subject to special demurrer and there was no waiver by a mere going to trial thereon. The error the judge fell into was this: an indictment for riot must allege at least two participants, but it possibly need not allege more than two even if there are more; but, if the indictment shows on its face that more than two persons participated in the riot, it is defective if it fails either to allege the names of the others referred to or to allege that their names are unknown to the grand jury. Even if it is true that it is permissible to allege the acts of only two persons in a charge of riot, when there are others involved, and that it is not necessary either to allege the names of the others or to allege that their names are unknown to the grand jury, if either of such unnecessary allegations is made it becomes a material part of the indictment and must be proved. It is idle to delve into the reasons for this truth. *Fulford* v. *State*, 50 *Ga.* 591, *Smith* v. *State*, 185 *Ga.* 365 (195 S. E. 144), *Southern Express Co.* v. *State*, 23 *Ga. App.* 67 (97 S. E. 550), *Hightower* v. *State*, 39 *Ga. App.* 674 (148 S. E. 300), *Youngblood* v. *State*, 40 *Ga. App.* 514 (150 S. E. 457), and *Kryder* v. *State*, 75 *Ga. App.* 34 (41 S. E. 2d, 824). I express no opinion on the question whether the trial judge would or would not have abused his dis-

cretion if he had exercised it and denied a rule nisi or a motion for a new trial.